IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| FELICIA R. DUGGINS, | : |
| Plaintiff, | : |
| v. | : C. A. No. 12-72-MPT |
| APPOQUINIMINK SCHOOL DISTRICT, | : |
| Defendant. | : |

## MEMORANDUM ORDER

**I.   INTRODUCTION**

This is an employment discrimination case.  On January 1, 2012, Felicia R. Duggins ("Duggins") filed suit against the Appoquinimink School District ("District") alleging violations of the Rehabilitation Act of 1973 §501 et seq., 29 U.S.C. §791 et seq. and the Americans with Disabilities Act of 1990, 42 U.S.C. § 12111 et. seq. ("ADA"), the Family Medical Leave Act, 29 U.S.C. § 2601 ("FMLA"), and Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e-2(a) ("Title VII").[1]  Duggins claims that she was wrongly demoted by defendant.  Currently before the court is the District's motion for summary judgment.

**II.   BACKGROUND**[2]

Felicia Duggins has worked in the educational field since 1992. After eleven years in the Christiana School District employed as a high school teacher, she was promoted to an Assistant Principal position in 2003 within the Appoquinimink School

---

[1] D.I. 1 Complaint alleging that defendant's actions were racially motivated or relied on discriminatory behavior in regards to a disability.
[2] D.I. 25 at 2-5 and D.I. 26 at 2-13

District. In 2007, she was promoted to a Principal position at the newly-built Apppoquinimink High School ("AHS"). Duggins was a principal at AHS for approximately two years.

During this time, Duggins was involved in several incidents within the capacity of her position. Duggins was periodically evaluated by the District and by the teachers of AHS. After her first year, her initial evaluation in August 2008 as Principal was relatively positive. Following her second year, a series of reviews placed her performance significantly lower. Both the teacher surveys conducted in March 2009 and her summative evaluation in July 2009 revealed failures in leadership. This summative evaluation stated the morale of the teachers was low due to her ineffective leadership; she behaved in an unprofessional fashion; and her performance required improvement. In addition, Duggins missed at least two key meetings involving both her superiors and the parents of her students. During this time, Duggins alleges she was exhausted due to a significant workload, at least one racially charged encounter with a parent, and a diagnosis of severe depression. In March 2009, the District required Duggins to submit to a drug test in light of her behavior. The results were negative for illegal substances.

In April 2009, at a meeting with the Deputy Superintendent of the District and her mentor, Dr. Marion Profitt, Duggins was notified by Dr. Profitt that her performance had not improved. Duggins alleges her depression worsened until she took medical leave under the FMLA from May 13, 2009 through June 22, 2009, which was approved by the District. Upon her return, Duggins was informed she had been reassigned as the Assistant Principal for Middletown High School. For two years thereafter, she continued to receive her salary at a Principal's rate, until July 1, 2011, when her pay was reduced,

consistent with the level of the position as Assistant Principal.

On August 21, 2009, Duggins filed a racial and disability discrimination charge with the Equal Employment Opportunity Commission ("EEOC"). The EEOC subsequently issued a right to sue letter on October 26, 2011.[3]

## III.   STANDARD OF REVIEW

### A. Standard on Motion for Summary Judgment

Summary judgment is appropriate if the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and the movant is entitled to a judgment as a matter of law."[4] Once there has been adequate time for discovery, FED. R. CIV. P. 56(c) mandates judgment against the party who "fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[5] When a party fails to make such a showing, "there can be no 'genuine issue as to any material fact' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."[6] The moving party is therefore entitled to judgment as a matter of law because "the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof."[7] A dispute of material fact exists where "the evidence is such that a reasonable jury could return a verdict for the

---

[3] D.I. 1 at 11.
[4] FED. R. CIV. P. 56(c)(2).
[5] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).
[6] *Id.* at 323.
[7] *Id.*

nonmoving party."[8]

The moving party bears the initial burden of identifying portions of the record which demonstrate the absence of a genuine issue of material fact.[9]  However, a party may move for summary judgment with or without supporting affidavits.[10]  Therefore, "the burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence supporting the nonmoving party's case."[11]

If the moving party has demonstrated an absence of material fact, the nonmoving party must then "come forward with specific facts showing that there is a genuine issue for trial."[12]  If the nonmoving party bears the burden of proof at trial, he "must go beyond the pleadings in order to survive a motion for summary judgment."[13]  That party "may not rest upon the mere allegations or denials of his pleadings, but must set forth specific facts showing that there is a genuine issue for trial."[14]  At the summary judgment stage, the court is not to "weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial."[15]  Further, "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."[16]  The threshold inquiry therefore is "determining whether there is a need for trial – whether, in other words, there are any genuine factual issues that

---

[8] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).
[9] *Celotex*, 477 U.S. at 323.
[10] *Id.*
[11] *Id.* at 325.
[12] FED. R. CIV. P. 56(c).
[13] *Yeager's Fuel v. Pennsylvania Power & Light Co.*, 22 F.3d 1260, 1273 (3d Cir. 1994).
[14] *Anderson*, 477 U.S. at 248.
[15] *Id.* at 249.
[16] *Id.*

properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."[17]

### B. The *McDonnell Douglas* Standard

Both Duggin's disability claim and her FMLA claim are analyzed under the framework set forth in *McDonnell Douglas Corp. v. Green*.[18] This analysis is comprised of three separate phases. In the initial phase, a plaintiff bears the burden of establishing a prima facie case of discrimination or retaliation.[19] If the plaintiff successfully presents a prima facie case, the burden then shifts "to the employer to articulate some legitimate, nondiscriminatory reason" for the adverse employment action.[20] At this point, the burden shifts back to the plaintiff to show that the employer's stated reason for the employment action was pretextual.[21] "In order to survive summary judgment, a plaintiff must 'either (i) discredit[] the [defendant's] proffered reasons . . ., or (ii) adduc[e] evidence . . . that discrimination was more likely than not a motivating or determinative cause of the adverse employment action.'"[22]

## IV. DISCUSSION

### A. The Disability Claim

To establish a prima facie case of unlawful discrimination under the ADA, Duggins must demonstrate that she: "(1) has a disability; (2) is a qualified individual;

---

[17] *Id.* at 250.
[18] 411 U.S. 792 (1973)
[19] *McDonnel Douglas*, 411 at 802.
[20] *Id.*
[21] *Id.* at 804.
[22] *Schlifke v. Trans Would Entertainment Corp.*, 479 F. Supp. 2d 445, 452 (D. Del 2007) (quoting *Torre v. Casio, Inc.*, 42 F.3d 825, 830 (3d. Cir. 1994) discussing *McDonnell Douglas* burden shifting in an Age Discrimination in Employment Act ("ADEA") case).

and (3) has suffered an adverse employment action because of that disability."[23] The District asserts that Duggins cannot present a prima facie case because she is not disabled under the statute. To qualify as disabled, Duggins must: (1) have a physical or mental impairment that substantially limits one or more major life activities; (2) have a record of such impairment; or (3) be regarded as having such an impairment.[24] Duggins claims she was diagnosed with severe depression and depression is recognized under the ADA as a mental impairment.[25] She also contends she alerted the District as to her condition on March 18, 2009 when the diagnosis was made.[26] Duggins presents a medical form that states she had difficulty concentrating and sleeping, but is silent as to how the depression affected any other aspect of her life.[27] The same form indicates she experienced a depressive episode that may or may not be recurrent,[28] but had an expected duration of approximately six months. A six month long ordeal that eliminates the capacity to work for over a month is inevitably an impairment to a major aspect of Duggins' life and qualifies as a disability under the ADA.

The District does not dispute Duggins as a qualified individual. Superintendent Tony Marchio's ("Marchio") recommendations for promotion and positive initial evaluations prove that the District believed Duggins to be qualified.[29] Duggins manages to present some evidence proving that the school district was aware of her depression

---

[23] *Maynard v. Goodwill Indus. Of Del. And Del. County, Inc.*, 678 F. Supp. 2d 243, 244 (D. Del. 2010) (citing *Turner v. Hershey Chocolate USA*, 440 F.3d 604, 611 (3d Cir. 2006)).
[24] 42 U.S.C. §12102(1)(A)-(C)(2009).
[25] D.I. 26 at 6 (plaintiff's answering brief in opposition to defendant's motion for summary Judgment).
[26] *Id.*
[27] *Id.* At B048.
[28] *Id.*
[29] D.I. 25 at A77 (opening brief in support of motion for summary judgment).

prior to her demotion. While Duggins claims to have alerted the District as to her depression immediately, she did not adequately inform the District of a long-term, substantial disability. She offers only a paragraph of her deposition that fails to show she told the District of the intensity of her diagnosis,[30] and an e-mail in which she references a "few months" of severe depression, that made her job performance suffer.[31] In fact, the first document that appears to inform the District of the *severity* and possible effects of Duggins' condition was not received until June 10, 2009.[32] Duggins also admits that she never asked for any accommodations due to the disability after her disclosure to the District.[33] As a result of meetings and evaluations that were performed in April and May 2009, Profitt, Human Resources Director for ASD Mathias Fallis ("Fallis") and Marchio determined it would be appropriate to reassign Duggins for the upcoming 2009-2010 school year.[34] During her deposition, Duggins admits she has no proof as to any discriminatory behavior on account of her disability.[35] No explanation is

---

[30] *Id.* at A167-69 (taken from the deposition of Felicia Duggins:
"Q. Tell me how you alerted the district to the fact that you were suffering from depression.
A. Once it was labeled 'depression.' They had known that I was stressed and I was working those hours. I didn't put it all together that – but once I found out, it was – I had called off work . . . When I got [to the meeting], they talked about you're being – you said you're depressed . . . 'When were you diagnosed?' I think it was the day before I had just gone to the doctor. I gave them the paper. They read everything.").

[31] *Id.* at A49 ("I was at the Dover Behavioral Health Clinic being assessed and treated for sever depression. The past few months have been very difficult dealing with this illness and trying to perform the duties of my job in a satisfactory manner.").

[32] D.I. 26 at B047.

[33] D.I. 25 at A 176 (taken from the deposition of Felicia Duggins:
"Q. After the meeting with Dr. Profitt and Mr. Fallis, did you make any other requests for accommodations?
A. No.").

[34] *Id.* at A80 and A84.

[35] *Id.* at A179 (taken from the deposition of Felicia Duggins:
"Q. Would it be fair to say that is the same with respect to whether there was discrimination against you on account of your disability?
A. Do I have any proof? Correct. That would be fair to say, I don't have any proof.").

presented regarding how the District could make an unlawful employment action based on a medical condition, the extent of which it was unaware of during the time of the decision making process, which eliminates a causal link between Duggins' medical condition and her demotion.

Even if the District formulated a discriminatory attitude between March 2009 and the demotion, Duggins presents nothing to refute the legitimate, non-discriminatory reasons for the demotion. Duggins had been involved in at least one incident with a disgruntled parent and was unable to diffuse the situation before it escalated up the chain of command.[36] She failed to attend meetings with parents and conferences with supervisors without informing the District ahead of time.[37] Her inability to lead fostered an atmosphere of "unrest"[38] and she was described as "not approachable" by members of her staff.[39] In fact, according to teacher climate surveys, the school's performance on the surveyed conditions had become less effective across the board under Duggins' authority.[40] In a new high school, challenges will inevitably surface. The District appointed her as Principal because it believed she was capable of handling difficult situations. After several e-mails, meetings, and a number of evaluations that became progressively negative, the District made the legitimate, non-discriminatory choice to relocate Duggins to a less stressful position more indicative of her skills while continuing to pay her a salary above her position. Duggins offers no specific evidence in the record implying the District's reasons were pretextual. Because Duggins' evidence is

---

[36] *Id.* at A113-15.
[37] *Id.* at A49-50.
[38] *Id.* at A71.
[39] *Id.* at A74.
[40] *Id.* at A72.

insufficient to dispute the District's legitimate, non-discriminatory reasons for demotion, the District is granted summary judgment on the ADA claim.

### B. The FMLA Claim

To establish a prima facie case of FMLA retaliation, Duggins must show: "(1) plaintiff availed herself of a protected right under the FMLA; (2) plaintiff suffered an adverse employment action; and (3) there was a causal connection between the employee's protected activity and the employer's adverse employment action."[41] The District does not dispute the first two elements, but maintains there is no evidence demonstrating a causal link between her request for FMLA and the demotion. Similar to the ADA claim, Duggins offers no evidence that refutes the District was contemplating her reassignment as early as April 2009, as a result of standard and additional evaluations.[42] As a result, Marchio then scheduled a meeting to discuss performance concerns on May 15, 2009, which Duggins failed to attend.[43] The summative evaluation of July 2009 further describes important shortcomings in leadership capacity and communication skills that could inevitably lead to a reassignment. Duggins did not file for FMLA leave until mid-May, after she missed several days of work. Even then, Duggins failed to apply for leave until being reminded by Fallis via a letter requesting her compliance with the process.[44]

Duggins' purported causal link is that she was informed of her demotion shortly after she returned from leave, the same time that she received the summative

---

[41] *Schilfke,* 479 F. Supp. 2d at 452 (citing *Conoshenti v. Pub. Serv. Elec. & Gas Co.*, 364 F.3d 135 (3d Cir. 2004).
[42] D.I. 25 at 4.
[43] D.I. 26 at B060.
[44] *Id.* at B043.

9

evaluation as a result of the April 2009 reviews. Although "'[a]t least *when it is particularly suggestive,* the temporal proximity of plaintiff's protected conduct and [her] termination can raise an inference that there is a causal link between the two,"[45] temporal proximity alone is generally insufficient to establish the required causal connection.[46] Duggins offers no other evidence to imply retaliation save for the immediacy of her demotion upon return, which is insufficient to form a prima facie case of FMLA retaliation.[47] Upon being questioned by the District about any proof as to retaliation, Duggins stated that she had none.[48]

Even if Duggins' demotion was sufficient to establish evidence of a causal connection, she has not offered any evidence to refute the District's legitimate, non-discriminatory reason for demoting her. Because Duggins cannot prove a causal connection between her use of FMLA leave and her demotion, summary judgment is granted to the District for the FMLA claim.

### C. The Title VII Claims

#### a. Discrimination

Duggins also alleges a violation of Title VII. In order to establish a prima facie

---

[45] *Burch v. WDAS AM/FM*, Civ. A. No. 00-4852, 2002 U.S. Dist. LEXIS 12290, at *33 (E.D. Pa. June 28, 2002) (emphasis added).

[46] *Schilfke*, 479 F. Supp. 2d at 452 ("[P]laintiff has failed to produce evidence to establish causation. It is true that there is close temporal proximity between plaintiff's taking maternity leave and her termination. However, *timing alone will not give rise to an inference of retaliation.* The court must examine the record as a whole in determining causation. Plaintiff argues that, upon learning that she was pregnant, her supervisor abandoned her. To support her claim of abandonment, she maintains that the store was not properly staffed and there was inadequate security. However, there is no evidence that defendant took, or failed to take, action because of plaintiff's pregnancy.") (emphasis added) (internal citations omitted).

[47] *Id.*

[48] D.I. 25 at A179 (taken from the deposition of Felicia Duggins concerning FMLA retaliation:
"Q. I'm asking for proof with respect to you.
A. I don't have any proof. I feel that way.").

case of discrimination, she must demonstrate she: (1) is a member of a protected class; (2) was qualified for the position; and (3) suffered an adverse employment action under circumstances that give rise to an inference of unlawful discrimination.[49] This third element must show some disparity in treatment between Duggins and similarly situated co-workers that evidences discrimination.[50] Duggins may alternatively prove a Title VII violation via a hostile work environment. To demonstrate a hostile work environment, Duggins must establish: (1) she suffered intentional discrimination because of her race; (2) the discrimination was severe or pervasive; (3) the discrimination detrimentally affected her; (4) the discrimination would detrimentally affect a reasonable person in like circumstances; and (5) the existence of *respondeat superior* liability.[51] A prima facie case consisting of the elements of either theory must survive summary judgment.

Since the burden in an employment discrimination case first lies with the plaintiff, Duggins must produce evidence of a prima facie case for a Title VII claim. It is undisputed Duggins is a member of a protected class. Similarly, because the District promoted Duggins to the position of Principal and gave her a relatively positive review soon after placement indicates that she is, or at least was, qualified.[52] Marchio apparently believed Duggins was qualified, as he was the administrator who chose to promote her to Assistant Principal in 2003 and Principal in 2007.[53] Duggins, however, lacks any evidence of disparate treatment between herself and any similarly situated co-

---

[49] *Waldron v. SL Indus.*, 56 F.3d 491, 494 (3d Cir. 1995).
[50] *McLean v. Communications Constr. Grp. LLC*, 535 F. Supp. 2d 485, 490 (D. Del. 2008)
[51] *Aman v. Cort Furniture Retail Corp.*, 85 F.3d 1074, 1081 (3d Cir. 1996).
[52] D.I. 26 at B008-010.
[53] D.I. 25 at A77.

workers, primarily because she fails to identify any such individuals in the record. Since this is a race discrimination claim, race is a relevant and important factor in Duggins' evidence. Duggins purports certain incidents are direct evidence of racial animus towards her, which include undergoing a drug test without any factual basis, receiving a "purposefully" negative review,[54] being monitored while clearing her office, when other employees were not,[55] and not receiving similar help as her Assistant Principal.[56]

Duggins claims making her undergo a drug test when no other teacher has been so required is evidence of racial animus; however, beyond her assumption, she offers nothing to support her theory. The District does not deny utilization of its drug testing policy is a rare occurrence, but every employee of the District is subject to the same policy. Duggins alleges the District failed to drug test a white teacher, Laura Vanhouten, after she was seen intoxicated on campus. This incident was not reported to Fallis until months after it allegedly occurred;[57] thus a drug test would have been useless and ineffective at that point. Duggins argues Fallis' presence while she cleaned out her office constitutes racial animus because "other employees" were not similarly monitored. Duggins, however, admits she has moved her office on two prior occasions without supervision, which undermines her allegations. Duggins identifies two specific employees, John Martin and Byron Murphy, who were not monitored.[58] When pressed for further details, Duggins offers no evidence as to their race or position within the

---

[54] D.I. 1 at A14.
[55] D.I. 25 at A24.
[56] *Id.* at A152-57. Duggins claims her Assistant Principal was provided more help during Duggins' absence in FMLA leave, than Duggins received when that assistant was on maternity leave.
[57] D.I. 25 at A87.
[58] *Id.* at A159-60.

District,[59] and specifically admits that she has no personal knowledge of those events outside of what she has heard from other unidentified employees.

Duggins testified that there was discriminatory treatment in the disciplinary process. Duggins received a negative review and was demoted. She alleges the District treated a white teacher with considerable leniency when they made mistakes she believed to be more intolerable.[60] Another incident with a white football coach Duggins claims implies racial animus.[61] These are not similarly situated co-workers. Both of these incidents involved teachers well below the pay-grade and responsibilities of a Principal. Even if these situations exhibit disciplinary leniency, they do not convey any type of animus towards Duggins, as they are not appropriate comparisons.

Duggins' bald assertion that her white Assistant Principal was provided more aid during Duggin's absence than Duggins' received during the assistant's maternity leave is similarly unsupported. In fact, Duggins' admits to not knowing what, if any, additional support was provided to her Assistant Principal.[62] Moreover, an Assistant Principal should warrant more support when handling her superior's job, than a Principal would when assuming the tasks of her subordinate. When a plaintiff fails to present a record that demonstrates a prima facie case of discrimination, summary judgment must be granted.[63]

---

[59] *Id.*
[60] *Id.* at A107 ("A white teacher smacked a kid. She's allowed to resign. It's not right.")
[61] *Id.* ("Security breach with the DSTP at the time, Delaware State Testing Program . . . Knocked us from being a high rate of school for two years during academic review. The coach was allowed – he was suspended for 30 days.)
[62] *Id.* at A24.
[63] *Wilson v. Lock Haven Univ.*, 474 Fed. Appx. 74, 76 (3d Cir. 2012) (plaintiff's comparison to other employees unsupported by record evidence is insufficient).

Duggins references the same previously described incidents as evidence of discrimination via a hostile work environment. The Third Circuit has found that the discrimination analysis for this claim "must concentrate not on individual incidents, but on the overall scenario."[64] In addition, she also claims that there is a disparate treatment between black and white students at the school regarding disciplinary action.[65] This argument is unpersuasive. First, this survey data is unrelated to how the District demonstrated racial animus *towards Duggins.* Second, as Principal of AHS, Duggins had the discretion and responsibility to suggest changes to the disciplinary policy of the school. There is no evidence that Duggins took any such effort towards reform.

Duggins also relies on a confrontation with the parent of a white student, who was a teacher within the District, but not at AHS.[66] After a heated argument concerning the use of racial slurs by the basketball team, the parent directed racial slurs at Duggins.[67] Duggins admits having no knowledge of subsequent actions taken by Marchio with that parent/teacher.[68] It appears Duggins references this incident as evidence of purportedly severe and pervasive discrimination within the District. Courts in this circuit require, at least, a showing that race is a substantial factor and the harassment is ongoing..[69] Absent any record evidence that the District or an employee

---

[64] *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1484 (3d Cir. 1990.

[65] D.I. 26 at B023-30. An undated survey was performed by Kitty Rehrig, a District employee, showing a disproportionate treatment towards African-American students for subjective offenses.

[66] D.I. 25 at A111.

[67] *Id.* at A114. The parent asked Duggins if she "would like it if [she] was called a nigger" and that she "sure seemed offended by that".

[68] *Id.* at A120.

[69] *Brooks v. CBS Radio, Inc.*, C.A. 07-0519, 2007 WL 4454312, at *11 (E.D. Pa. Dec. 17, 2007) (analyzing *Cardenas v. Massey*, 269 F.3d 251 (3d Cir. 2001) (holding that the district court erred by not analyzing the aggregate effects of claims).

14

of the District acting in the capacity as an employee ever exhibited racial animus, Duggins fails to demonstrate a prima facie case of Title VII discrimination.[70]

### b. Retaliation

Duggins charges the District retaliated against her for her Office of Civil Rights ("OCR") and EEOC charges on account of her race. In order to prove a prima facie case of a Title VII retaliation claim, Duggins must show: (1) she engaged in activity protected by Title VII; (2) the District took materially adverse action against her; and (3) there was a causal connection between her participation in the protected activity and the adverse action.[71]

By filing a discrimination charge with the OCR in April 2009 and the EEOC in August 2009, Duggins participated in protected activity under Title VII; the District first became aware of the EEOC charge on June 22, 2009.[72]

The District does not dispute Duggins was demoted in July 2009 and her salary was subsequently realigned in July 2011. However, no evidence has been presented showing a causal connection between Duggins' ORC and EEOC charges and the demotion that temporally followed. The retaliation claim must suffer the same fate as the FMLA claim. Prior to the June 22, 2009 e-mail between Duggins and Fallis, Duggins provides nothing indicating the District was aware of any discrimination charges against it.[73] That e-mail series demonstrates the District intended to address its concerns regarding Duggins' performance during the meeting on May 15, 2009, that

---

[70] As noted previously, a single incident involving a racial slur by an employee of the District is insufficient to support a claim of severe and pervasive discrimination.
[71] *Moore v. City of Philadelphia*, 461 F.3d 331, 340-41 (3d Cir. 2006).
[72] D.I. 26 at B060.
[73] *Id.*

was cancelled due to her unavailability, which proves the District was worried about Duggins' performance prior to any legal charges. As with the other claims, Duggins' offers no other evidence to show causation between the adverse action and the protected activity.

Even if these incidents did rise to the level of discriminatory behavior, nothing on the record defeats the District's proffered legitimate, non-discriminatory reason for the demotion. For the foregoing reasons, summary judgment in favor of defendant on the Title VII discrimination claim is granted.

### D. Damages

#### a. Punitive Damages

Duggins claims punitive damages; however, she is statutorily barred from recovering such damages.[74] As a public school district, the District is a government entity for the purposes of 42 U.S.C. §1981.[75] Therefore, her claim for punitive damages is dismissed.

#### b. Front Pay

Duggins also requests front pay damages. The general rule is any demand for forward-looking economic loss "must be founded upon . . . expert opinion" to determine the appropriate amount of damages.[76] This standard was recently reiterated by the Third Circuit in 2009.[77] Despite her employment with the District for a number of years,

---

[74] 42 U.S.C §1981a(a)(1), (a)(2), (b)(1), (precluding recovery for punitive damages from any government, government agency, or political subdivision for Title VII claims).
[75] *Hightower v. Easton Area School Dist.*, 818 F. Supp. 2d 860, 888 (E.D. Pa. 2011).
[76] *Hodge v. Caterpillar, Inc.*, C.A. 91-0717, 1992 WL 98415, *3 (E.D. Pa. Apr. 30,1992).
[77] *Donlin v. Philips Lighting North Am. Corp.*, 581 F.3d 73, 82-83 (3d Cir. 2009) (any forward pay must be accompanied by a sufficient foundation of experience in the calculation of wages on the part of the plaintiff or by the more preferred method of expert witness testimony).

no evidence of her background, education, experience, or knowledge in accounting, economics, or wage calculation for future earnings has been provided. Neither does she present an expert witness to offer an opinion on such damages. In the absence of the required evidence, Duggins is precluded from recovering any forward-looking economic loss, such as front pay.

### c. Damages for Mental Anguish

Under 42 U.S.C. §1981a, compensatory damages for mental anguish are recoverable. To recover damages for emotional distress, the plaintiff must prove an actual compensable injury.[78] The record is void of any new injury caused by the District's behavior. Duggins' emotional distress, by her own testimony, has been present for some time. She testified that she has dealt with overwhelming stress since early 2005, but refused to offer any information to differentiate her current emotional anguish from any pre-existing distress.[79] Record evidence demonstrates that Duggins began complaining of depression around March 12, 2008.[80] The alleged actions by the District which Duggins believes are the cause of her distress did not occur until nearly a year following these initial complaints of depression. Duggins contends that her initial complaints were related to exhaustion due to her job at the new school.[81] The fact that Duggins has a demanding job and that her employer took a subjectively negative action through her demotion does not immediately create an actual injury. Although her condition may have been exacerbated by actions of the District, Duggins refuses to offer

---

[78] *Carey v. Piphus*, 435 U.S. 247, 264 (1978) (proof of an actual injury is necessary before recovery for emotional distress).
[79] D.I. 25 at A166.
[80] *Id.* at A165.
[81] *Id.*

17

any testimony as to the differences between her pre-demotion distress and that which followed.[82] Further, she has not proffered any evidence demonstrating a nexus between the District's actions and her emotional distress. It would be unfair to hold the District accountable for the effects of circumstances for which it was not responsible. The claim for mental anguish damages must be dismissed.

**V. CONCLUSION**

For the foregoing reasons, the District's motion for summary judgment (D.I. 24) on disability discrimination under the ADA, retaliation under the FMLA, and discrimination and retaliation on account of race under Title VII and regarding damages is granted.

---

[82] D.I. 25 at A166 (taken from the deposition of Felicia Duggins:
"Q. There is a reference in one of Dr. Kotak's notes that's dated May 11, 2005 that talks about a reference to stress regarding personal. Can you tell me about what was going on with you back in May of 2005 that would have been causing you stress?
A. No. I have no idea.
Q. No, you don't remember, or, no, you are not able to tell me or don't want to tell me? I'm just trying to get clarification.
A. I don't want to tell you.").